ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS v.
J. M. FERGUSON.

Decided June 22, 1901.

**1.—Carriers of Passengers—Degree of Care—Physical Condition of Passenger.**

Where, in an action against a railway company for injuries to plaintiff's wife, causing a miscarriage, and resulting from a collision of cars in making up the train, the court gave the usual charge as to the degree of care required of carriers of passengers, a further requested charge to the effect that as there was no evidence showing that defendant had notice that plaintiff's wife was pregnant, it could not be required to exercise any greater care of her than of an ordinary passenger, was properly refused, since defendant was liable for the injury although the shock of such collision would not have injured an ordinary passenger, and this on the ground that it must be held to exercise the prescribed high degree of care in the light of an imputed, if not actual, knowledge that people who are in delicate condition, or aged, or physically infirm, may and do constantly travel on its train.

**2.—Same—Negligence—Burden of Proof—Charge.**

A charge, in such an action, that if defendant was not negligent in making up its train, plaintiff could not recover, was not erroneous as inferentially placing the burden of proof on defendant to show want of negligence, where other parts of the charge expressly placed upon plaintiff the burden of proving the facts necessary to a recovery.

**3.—Same—Ordinary Care—Charge.**

Where, in such action, the court had charged, in connection with the proper definition of ordinary care, that if the jury found it was dangerous to the wife's safety for her to have undertaken the journey, and that in doing so there was a failure to exercise ordinary care which approximately caused the injury, they should find for defendant, such charge was not objectionable because it failed to require of plaintiff such degree of care as was necessary for persons in the then condition of the wife,—it being exclusively for the jury to determine what a person of ordinary prudence would do, or be guilty of negligence in failing to do, under the facts of any given case.

**4.—Same—Concurring Negligence—Charge.**

The charge having correctly stated the consequences of every act of negligence on the part of plaintiff and his wife supported by the evidence, it was not error to refuse a special charge to the effect that if the injury was caused by the concurring negligence of defendant and of plaintiff, the verdict should be for defendant.

**5.—Same—Facts Showing Negligence in Coupling Cars.**

See the opinion for evidence held to warrant the submission to the jury of the issue of negligence on the part of defendant in the coupling of its cars while making up the train.

Appeal from Tarrant.   Tried below before Hon. Irby Dunklin.

*E. B. Perkins* and *Perkins, Gilbert & Perkins,* for appellant.

*Cowan & Burney* and *Wilson & Kinder,* for appellee.

In the fifth paragraph of the charge of the court, referred to in the opinion, the jury were instructed that: "If you do not believe from the evidence that defendant was guilty of negligence, as negligence is defined above, in the manner of making up its train in Texarkana, then you will find for the defendant."

CONNER, Chief Justice.—This suit was instituted by appellee to recover damages on account of injuries alleged to have been negligently inflicted upon his wife, Mattie Lee Ferguson. It was alleged that on the 28th day of April, 1899, appellee and his wife were passengers upon a passenger train of appellant at Texarkana, Texas, from which point they were en route to Frost, Texas; that while such passengers were seated in one of appellant's cars, appellant negligently caused an engine or train to collide with the car upon which appellee and his wife were seated with such great force that it partially knocked the plaintiff and his wife from their seats, and greatly shocked, jerked, and jolted appellee's wife, thereby injuring her and causing her great physical and mental suffering and producing within a few days thereafter the premature birth of twins; whereby she was permanently injured in health and in ability to perform her household duties.

Appellant answered by general denial, and that appellee and wife were through passengers from Saint Louis, Mo., to Frost, Texas, and had come into Texarkana but a short while before its train was made up. That appellant detached the sleeper and attached a parlor car, and that it did so with care and caution, and that no greater force was used than was necessary to couple automatic couplings, and no jar was occasioned to the passengers, more than was absolutely necessary to make said coupling. That it is required by law to adopt the character of coupling used for the protection of its employes, and that it had exercised great care in selecting and securing competent, experienced, and trustworthy employes, and that such were performing the duties of coupling the cars at the time and place of the alleged injury; that appellee and his wife were guilty of contributory negligence in making a journey of some 800 miles by rail and then immediately by buggy for eight miles over rough country roads without stop or necessary rest and sleep, and that they assumed the risks of such injury reasonably to be expected to follow such long journey and excessive fatigue; that her miscarriage was also the result of a want of care on their part, knowing her delicate condition, which appellant did not know.

The trial resulted in a verdict and judgment in appellee's favor for $1000, from which appeal has been duly perfected. There is evidence tending to show that the collision and resulting injuries were as alleged in appellee's petition. The main questions arising upon the appeal relate to the charges given and refused.

The evidence showed that appellee's wife, at the time of the injury complained of, was about six months advanced in pregnancy, and among other things the court instructed the jury that: "The defendant was not an insurer of the personal safety of the plaintiff's wife, Mrs. Mattie Lee Ferguson, while she was a passenger on the appellant's train, but owed to her the duty to exercise that high degree of care for her reasonable personal safety which a very prudent person would use under the same circumstances about the same matter, and a failure of the defendant, if any, to exercise such degree of care would be negligence."

To correct the supposed defect in this charge, appellant requested the following special instruction: "It is not intended by the general charge to require of defendant to exercise any greater care with reference to plaintiff's wife than to any other person. There being no evidence to show that defendant had notice that plaintiff's wife was pregnant, it could not be required to exercise any greater care of her than of an ordinary passenger. If, therefore, the jury find from the evidence that defendant exercised the care that is required of railway companies, under the definition as given in the general charge, in making up its train at Texarkana, and making the coupling thereon, then and in that event the jury would find for the defendant." Which charge was rejected, and to all of which error is assigned.

It is insisted that, without knowledge of the delicate condition of appellee's wife, the degree of care imposed by law upon the railway com-

pany was that due to all persons in usual and ordinary physical condition, and not such as might have been due to one "in the light of attending circumstances," and this raises, as we conceive, the principal question in the case. While there was no evidence that appellant's servants in charge of the train and cars in question at the time of the coupling complained of had knowledge of the peculiar condition of appellee's wife, we nevertheless believe that the court's charge must be sustained, and that its action in rejecting the special charge requested was correct.

Of the cases cited by appellant in support of its contention, the one most directly in point perhaps is the case of the Pullman Car Company v. Barker, 4 Colorado, 344, 34 American Reports, 89. This was a case in which a woman was negligently exposed to extreme cold during the menstruating period, whereby she suffered injury, and it was held that the injury was a remote and not the proximate result of the negligence complained of, and the court in the course of the opinion takes occasion to say that: "Where physical weakness or disability is apparent to, or is brought to the attention of the carrier, undoubtedly that high degree of care which the law imposes upon him would, under certain circumstances, involve duties in reference thereto. As that he shall allow an aged, infirm, or crippled person a reasonable time in which to get on or off the coach or car, having reference to their crippled or infirm condition. * * * Where no duty is imposed, no liability can attach. Another passenger might have suffered equally serious consequences from the effect of the cold upon a wound in the foot, superinducing inflammation, and possibly necessitating amputation. Can it be said that the law imposed upon the carrier an enlarged duty having reference to the wound, and that the added risk of traveling in this condition must be assumed by him and not by the passenger from whose personal condition it springs? We think not. * * * The cars of a railroad company are not hospitals, nor their employes nurses. Persons who are ill have a right to enter the cars of a railroad company and travel therein; as a common carrier of passengers the company has no right to prevent them, but the increased risk arising from conditions affecting their fitness to journey, certainly where they are unknown to the carrier, must rest upon their own shoulders."

Appellant also cites the case of Fairbanks v. Kerr, 70 Pennsylvania, 86, and Jackson v. Railway, 87 Missouri, 422. These latter cases do not seem to be so clearly in point as the Colorado case, but giving the case from which we have quoted the full effect contended for, we have no hesitancy in expressing our disapproval thereof. It is directly referred to as "unsustained by authority" in the case of Brown v. Railway, 54 Wisconsin, 360. "This decision is" (quoting the language of the writer of the opinion in the Wisconsin case), "it seems to me, supported by the principles of neither law nor humanity. It in effect says that, if an individual unlawfully compels a sick and enfeebled person to expose himself to the cold and storm to escape worse consequences from his wrongful act, he can not recover damages from the wrongdoer, because it was

his sick and enfeebled condition which rendered his exposure injurious. Certainly such a doctrine does not commend itself to those kinder feelings which are common to humanity, and I know of no other case which sustains its conclusions."

In the case of Mann Boudoir Car Company v. Dupree, 54 Federal Reporter, 647 (21 Lawyer's Reports Annotated, 289), a Mrs. Dupree, who was about two months advanced in pregnancy, had taken a berth in a sleeping far from which she was afterwards wrongfully and rudely expelled, whereby miscarriage was subsequently brought about, and Justice McCormick, who delivered the opinion, among other things, says: "The plaintiff in error's second proposition rests on the theory that, unless it was apparent to a casual observer that Mrs. Dupree was enciente, or that fact was known to the servants of the company, she could not recover damages for her subsequent miscarriage, though the jury might believe from the evidence the miscarriage was proximately caused by the unlawful conduct of the company's servants in expelling her from the train. This theory, and the requested charge embodying it, would require every pregnant woman to refrain from travel; to take all risks of the negligence of public carriers. We are not willing to sanction by our authority a rule that would so shock the delicacy, dignity, and sense of justice of our 'honorable women not a few.' "

The case of Sawyer v. Dulaney, 30 Texas, 479, was a case where a Mrs. Dulaney had been injured and subsequently caused, as in the case before us, to give premature birth to twins through the negligence and careless driving of an inebriated stage driver. Counsel for the proprietors of the stage company, among other things, requested the court to charge the jury that the defendants were not "responsible for the injury that resulted from the peculiar condition of the plaintiff, Mrs. Dulaney, but only for such an injury as would ordinarily have resulted to a person not so circumstanced." The Supreme Court approved the rejection of this charge, and say: "Passenger carriers do not undertake to carry those of the stronger sex alone, or those of such robust constitutions or mental conditions as are less liable than others to receive injuries from the recklessness of the carriers or their agents. Their liability depends not upon the physical ability of the passengers, but upon their own conduct. The very fact that some of the passengers were in such a condition that the upsetting of the stage crowded with passengers would be likely to produce serious results to them certainly ought not to be pleaded in mitigation of damages, when these serious results are the consequences of the violation of duty on the part of the carriers."

In the case of Railway v. Rushing, 69 Texas, 306, our Supreme Court say: "The objection to the charge is that the appellant's liability was made to depend upon whether the force of the engine was sufficient to throw the plaintiff down, and not whether it was sufficient to throw a person of ordinary physical ability. The charge as given is correct law. A railway company owes a duty to persons other than those of ordinary physical condition; they are presumed to know that persons old, decrepit,

and infirm, travel on their trains, and they must exercise care accordingly." See also Railway v. Estill, 147 U. S., 591, and Mr. Thompson's new work on Negligence, vol. 1, sec. 156.

We approve what was said in the Wisconsin and subsequently cited cases. The court gave the proper standard of care, and the degree of care so prescribed, in our judgment, must be exercised by the carrier of passengers in the light of an imputed, if not actual, knowledge that the aged, the infirm, and those in delicate condition may and do constantly travel on the passenger trains of the country. Humanity is heir to many ills and distinctive conditions requiring notice and peculiar care, and those commonly and constantly engaged in their transportation for hire ought not to be heard to say in excuse for their negligence, "We were without notice of the fact."

The remaining assignments need but brief notice. The fifth clause of the court's charge is objected to in the twelfth and seventeenth assignments, on the ground that it places the burden of proof upon appellant to show an absence of negligence on its part. We can not concur in this construction of the clause referred to. The charge seems to present but the negative of the essential proposition of negligence given in the preceding portions of the charge, and which the jury are instructed must be found in appellee's favor before he could recover. If it places the burden on defendant, it is but inferentially so, and when read together with the eleventh paragraph of the charge, which expressly places upon the plaintiff the burden of proving the facts necessary to a recovery, we can not think it prejudicial.

In the thirteenth and fourteenth assignments the eighth and ninth clauses of the court's charge, to the effect that it was the duty of the plaintiff to exercise ordinary care for the personal safety of Mrs. Ferguson, were objected to, as was also the refusal of the court to give a special charge seeking to correct the error, on the ground that the court's charge does not require of plaintiff such degree of care as was necessary for persons in the delicate situation of Mrs. Ferguson; the contention being that the degree of care necessary for the safety of one in an ordinary condition is not the same as is required from one in the condition of Mrs. Ferguson. We see nothing in these assignments. The court, in the clause referred to, properly instructed the jury, in addition to what has been stated, that if they found it was dangerous to the wife's safety for plaintiff and wife to have undertaken the journey from St. Louis, Mo., and that in undertaking the journey from said point to Frost, Texas, they failed to exercise ordinary care, and that such want of care approximately contributed to the wife's injury, they should find for the defendant. Ordinary care was correctly defined in a preceding portion of the charge, and this was the proper standard of care for the jury to apply to the particular circumstances. As was said in the case of Railway v. Smith, 87 Texas, 355: "In some cases it has been said that the degree of care varies with the circumstances of each case, but by this is

meant that the amount of vigilance to be exercised must be proportioned to the necessities and exigencies of the occasion. Examination of these cases will show that it is not meant that a different standard of care should be applied to the use of the same instrumentalities with reference to persons occupying the same relations to each other; the confusion arises from the use of the word 'care' to express its different meanings. It is right and proper for the court to charge what is the degree of care incumbent upon a party engaged in a given employment, but it would be error to charge as to the quantum of diligence that should be used by such persons under a certain state of facts; that is ordinarily a question of fact for the jury to find, by determining what a person of the class given as the standard would do under such a state of case."

Nor do we think the use of the word "dangerous" in the ninth paragraph prejudicial. The evidence was conflicting as to whether such journey could be safely taken by a woman in Mrs. Ferguson's delicate condition. This issue was a necessary element of the contributory negligence charged, and it seems difficult to ascribe such negligence to plaintiff because he and his wife undertook the journey, unless the jury were enabled to first find that such trip, under the circumstances, was dangerous to the safety of the wife.

In the eighteenth and nineteenth assignments complaint is made of the refusal of the court to give special charges numbers 6 and 7, to the effect that if injury to appellee's wife was caused by the concurring negligence of defendant and of plaintiff, to find for the defendant. In so far as called for by the facts, we think the court's charge fully and fairly submitted the issue. In the tenth paragraph the jury were expressly instructed that, in the event they found for the plaintiff, they should exclude from their finding all damages, if any, accruing to Mrs. Ferguson by reason of an aggravation of her injuries arising out of want of proper care after the injury. The only other evidence tending to show negligence on the part of the plaintiff was in taking the journey with his wife from St. Louis, and this the jury were instructed would preclude a recovery if negligently undertaken.

We find no reversible error in the objections to the evidence, nor in the refusal of the court to give peremptory instruction for the defendant. While the evidence may seem to preponderate in favor of appellant's contention that the coupling of cars at Texarkana was but the ordinary coupling, and without negligence, we think it nevertheless apparent from the testimony of appellee and wife that the court properly refused the peremptory instruction.

Appellee testified: "I had traveled on trains a considerable amount previous to that time. The shock that resulted in this injury was the hardest jolt I ever got on a train; never been shook up like that before nor since. I have seen and known of cars being coupled on trains; have rode on trains that have been coupled; never had such a shake-up before; I thought at the time they had miscalculated the distance between coaches when they came back, backing up."

Appellee's wife testified: "I was thrown against something. It produced great pain. I was pregnant at the time, and had been for six months. At the time I received the injury I was a passenger in the car. I received my injury because the engine ran back against the coach I was in,—I didn't see it, don't know which one it was,—and caused a great shock that hurt me very bad; it knocked me from my seat and hurt me awful bad; so bad I cried and just suffered from then until my miscarriage. At the time this occurred we were in front part of the coach, on the front seat. Between us and the end of the car there was a seat that ran endways, along the side of the car. I was sitting next to the side of the car, next to the window, and this seat running lengthwise was right in front of me. There was an arm on that seat. At the time of the collision and shock I was thrown against the side of the car or that arm, I don't remember which."

Other evidence might be quoted, but we think it sufficient to say that the evidence supported the material allegations of the petition and the verdict of the jury. The jury by their verdict disposed of the issues of negligence and of contributory negligence in appellee's favor under a charge, as we think, fairly submitting the issues, and we see no reason for disturbing the result.

The judgment is affirmed.

*Affirmed.*