## Pecos & Northern Texas Railway Company v. Lulu L. Willliams.

Decided December 19, 1903.

**1.—Pleading—Personal Injury.**

In an action for personal injuries plaintiff's petition set forth the injuries, sickness and suffering resulting from her having been put off a train in a snowstorm, and also alleged that pus had been caused to form in and near the bone behind her ear which might require an exceedingly dangerous and painful operation to be performed such as might result in her death. The charge did not submit such matter to the jury as an element of damages. Held, that an objection to the pleading as being of matters conjectural and uncertain, and as calculated to prejudice the minds of the jury, was not well taken, and that such averments might be construed merely as descriptive of plaintiff's injuries.

**2.—Personal Injury—Measure of Damages—Prior Delicate Health.**

Where plaintiff was carried a mile beyond her station and put off the train in a snowstorm, the fact that the railway company had no notice that she was then and had been all her life of delicate health, and that she was without sufficient wraps and heavy clothing to withstand the storm, will not absolve the company from liability for the entire injury occasioned by its negligence.

**3.—Same—Evidence in Rebuttal.**

Where the defendant had, on cross-examination, developed the fact that no physician had been called to attend plaintiff, it was admissible for plaintiff to show that she and her father were too poor to employ a physician.

**4.—Same—Mortality Tables.**

It being shown that plaintiff's injuries were permanent, mortality tables were admissible to show the life expectancy of one of her age and sex, although such tables were based on experience with insurable subjects, people of average health, and plaintiff's general health was such that she could not obtain insurance. Such matter went to the weight and not the admissibility of the evidence.

**5.—Carrier of Passengers—Degree of Care—Ejecting Passenger.**

Where a lady, traveling alone, was carried a mile beyond her station through the carrier's fault and was then put off in a snowstorm, and so compelled to walk back, although she was thinly clad and requested that the train be backed to the station, it seems that a charge holding defendant to the exercise of the highest degree of care towards passengers was not error, but if so it was harmless error, as the evidence showed that defendant failed to use ordinary care.

Appeal from the District Court of Deaf Smith. Tried below before Hon. Ira Webster.

*J. W. Terry* and *Browning, Madden & Trulove,* for appellant.

*Turner & Boyce* and *John P. Slaton,* for appellee.

CONNER, Chief Justice.—This is an appeal from a judgment of $2000 in favor of appellee, as damages for personal injuries resulting from the alleged wrongful act of appellant's servants in ejecting appellee from one of appellant's trains, whereon she was a passenger, about one mile beyond the point of her destination, whereby she was compelled, while thinly clad and unprepared, to walk through snow and storm back to her station, by reason of which she took a severe cold, suffered mental and physical pain, and received permanent injuries.

Appellee alleged, among other things, that she was and long prior to the wrongs complained of had been a frail and delicate person, unable to withstand exposure to inclement weather, * * * and that as a direct result of the exposure endured on account of the wrongful acts charged she took a severe cold which resulted in tonsilitis, excruciating pains in her neck and head and a pus discharge from her right ear; * * * that the mastoid bone behind the right ear had pained her, a large amount of pus having formed in and near said bone, "which may require an exceedingly painful and dangerous operation to be performed which may result in plaintiff's death."

It is first insisted that "things which may be required, may result, may come to pass in the future," are so uncertain and conjectural in nature as not to be susceptible of proof, or to constitute legal elements of damage, and that "allegations of such facts in a manner calculated to bias or prejudice the minds of the jury against the defendant against whom a verdict and judgment are rendered, constitutes reversible error." It is undoubtedly true that mere possible or speculative consequences of a wrongful act are too remote and not proper elements of damage, but the court submitted no such element to the jury, nor do we find objection to any evidence of mere conjectural results of the injuries appellee establishes by her testimony, and we see nothing in the mere manner of making the averments quoted, which is the specific objection made, that could have operated to appellant's prejudice. Besides, there seems to be force in appellee's contention that said averments are to be construed merely as descriptive of the extent of her injuries, and not as presenting the elements of damage.

What appears to be appellant's principal contention arises from the objection presented in multiplied forms to appellee's averments and proof to the effect that she was a person of delicate health, unprotected, without sufficient wraps and clothing to withstand the raging storm of wind, rain, sleet and snow described, and that she had been afflicted with an ear trouble since early childhood. The contention is in effect that, in the absence of notice of such condition of the person, appellant is not liable for such injuries as may have resulted to appellee "in excess of what would have resulted to a woman in a natural state of health, and clothed as one would naturally be expected to clothe herself to make such trip in such weather."

The appellee in the case of Driess v. Frederich, 73 Texas, 460, had had a limb broken some sixteen years prior to the injury thereto of which he complained, and our Supreme Court, in disposing of a requested charge, said: "If, by the charge asked, appellants desired the jury to understand that appellee would only be entitled to recover damages on account of the injury received through appellant's negligence, which would have resulted had his limb not been before fractured, then the charge, which might have been so understood, was properly refused. The damages which appellee was entitled to recover were the damages resulting to himself conditioned as he was at the time of the injury,

and not such damages as he might have been entitled to had his condition been different. That the injury resulting from the negligence of appellants may have been aggravated or more easily caused by reason of the fact that the limb had received a former injury can not affect the question of right to or measure of damages."

The same question in substance was presented in this court in the case of St. Louis Southwestern Railway Co. v. Ferguson, 26 Texas Civ. App., 460, 64 S. W. Rep., 797, and after a review of authorities we then said: "The court gave the proper standard of care; and the degree of care so prescribed, in our judgment, must be exercised by the carrier of passengers in the light of an imputed, if not actual, knowledge that the aged, the infirm, and those in delicate condition may and do constantly travel on the passenger trains of the country. Humanity is heir to many ills and destructive conditions requiring notice and peculiar care, and those commonly and constantly engaged in their transportation for hire ought not to be heard to say in excuse for their negligence, 'We were without notice of the fact.'" A writ of error was refused in Railway Co. v. Ferguson, and we conclude that all assignments herein involving the question must be overruled.

The evidence to the effect that appellee and her father were too poor to employ a physician was clearly admissible in explanation, as offered, of the fact developed by appellant on cross-examination that no physician had been employed. Nor do we think the court committed error in admitting mortality tables showing appellee's life expectancy was 40 and 17-100 years. The objection was that such tables, as was shown, were based upon the average continuance of life in insurable subjects of good health; whereas appellee, as alleged and proved, was not in good health or an insurable subject. We think the objection noted goes to the weight and not to the admissibility of the tables mentioned. There was evidence tending to show permanent injuries, and appellee's condition was a proper subject of consideration in connection with the mortality tables and other evidence in determining her life expectancy. The evidence of appellee's condition tended of course to show that an average continuance of her life was not to be expected, but in the absence of a contrary showing, we must assume that the jury gave the proper effect to the evidence. What we said in Railway Co. v. Long, 26 Texas Civ. App., 601, 3 Texas Ct. Rep., 631, is here applicable, viz: "The usual and well recognized method of proving life expectancy is by standard life tables shown to be such by a qualified witness, to which may be added, for the purpose of varying the conclusion to be drawn from the tables, evidence that the condition of health and strength is substantially different in a given case from that usually enjoyed by persons of the same age. Abbott's Trial Ev., 724; Rogers on Exp. Test., secs. 160, 163." See also Railway Co. v. Griffith (Ark.), 39 S. W. Rep., 550.

Objection is made to the charge in that it imposed upon appellant that high degree of care generally required of railway companies in the transportation of passengers; the contention being, to use the language

of appellant's argument, that "when a passenger has safely alighted from the train, without accident, the rule in the charge closes.   *   *   * The rule is a protection against accidents in transporting only, and its application extends to no sort of injuries other than those resulting during transportation from defects in appliances or such accidents as result from the handling of appliances." If it be conceded, which we are by no means inclined to do, that ordinary care only was required of appellant to so fulfill its contract of carriage as to safely deposit appellee at the point of destination, and that the charge was therefore erroneous, the error is nevertheless harmless, inasmuch as we think it clear that those in charge of the train violated every rule of care that with any reason can be applied to the circumstances. Appellee's evidence, which has been established by the verdict of the jury, was to the effect that she was a passenger whose known destination was Unbarger, a regular station on appellant's line of railway; that she was transported about one mile beyond her station, at which no stop was made, and was by the conductor required to get off, thinly clad, in a driving storm of wind, snow and sleet, after which she was required to walk back to the station in several inches of snow with low-quartered shoes, in consequence of all which, and without contributory negligence on her part, as has also been affirmed by the verdict, she suffered great and long continued physical and mental pain and permanent injury. The conductor must have known of the snow and of the storm and of appellee's unprepared condition, and it seems plain that his duty under the circumstances, as determined by any rule of care, was to have backed his train to the station as appellee testified she requested.

The same paragraph of the charge is also objected to on other grounds to the effect that it assumes as true an issuable fact, authorizes a double recovery, and does not require the finding of damages to be predicated on the evidence. The charge has been carefully considered, and we think none of the objections are maintainable. In authorizing a recovery for exposure to inclement weather and also for such other damages as might result from "serious" injury, etc., that might result from such exposure, the court, we think, was merely adapting the charge to the phases of the evidence tending to show temporary discomfiture and pain only, and that tending also to show serious injury, etc. The charge as a whole could hardly have been misleading, and all objections thereto are overruled.

We find no error in the refusal of special charges, think the evidence supports the material allegations of appellee's petition and the verdict, in amount as well as in other particulars, and the judgment is accordingly affirmed.

*Affirmed.*