## PAYNE, Agent, v. RICHARDS et al.
### (No. 10078.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 16, 1922. Rehearing Denied Jan. 20, 1923.)

1. **Trial ⬤⟾352(4)—Refusal to submit special issue as to whether damage occurred from inherent vice in stock shipped not error.**

In action for injuries to stock alleged as caused by defendant's failure to furnish cars for prompt shipment and negligent handling in transportation, where there was no evidence to show that they were affected with disease of any kind, notwithstanding there was evidence showing that some cattle had died on the trip to the railroad, in view of a charge as to whether the damage was caused as the sole result of the cattle being too weak to stand the railroad trip, refusal to submit a special issue as to whether the damage occurred by reason of inherent vice in the stock not the negligence of defendants was no error.

2. **Appeal and error ⬤⟾1062(2)—Refusal to submit special issue as to whether there was market value for cattle at destination not prejudicial error.**

In action for injuries to cattle shipped over defendant's railroad, where material inquiry was whether there was a market value for the cattle at destination at the time of their arrival, it being doubtful whether the evidence raised such an issue, in view of an answer to a special issue finding that the cattle that died at the end of transportation were worth $50 a head, considerably less than the value given by any of the witnesses, there was no prejudicial error in refusal of a special issue as to whether there was a market value for cattle of the kind and quality of plaintiffs' at the date of their arrival at destination.

3. **Trial ⬤⟾352(4)—Refusal of special issue as to whether shipper was contributorily negligent in fastening gates of cattle pens not error.**

In action for injury to cattle in transportation, where it was alleged that the railroad company negligently failed to fasten its gates on its stock pens so as to hold the cattle, there-

by permitting their escape, where the evidence did not raise an issue as to contributory negligence of plaintiff, there was no error in refusing a special issue as to whether plaintiff was guilty in the manner and way of fastening the gates at the time he put the cattle in the pens.

**4. Trial 352(4)—Refusal to submit speculative issue not error.**

In action for injury to cattle in transportation, there was no error in the refusal to submit an issue as to whether the cattle in question would have been shipped through without damage had they been loaded and shipped on the day that they arrived at the railroad, which issue was speculative and foreign to issues made by the pleadings.

**5. Carriers 228(3)—Evidence as to number of calves lost the next spring from cows held relevant to issue of damage to cows.**

In action for injuries to cattle, wherein plaintiff did not seek recovery for value of calves lost, and there was no issue that would permit such recovery, but there was testimony that the negligence, want of feed and water, and exposure complained of would tend to cause cows bearing calves to lose them and thus injure the cows, evidence as to the number of calves he lost the next spring from the cows was relevant to the issue of the damage to the cows.

**6. Appeal and error 1068(5)—Refusal of instruction as to extra feed bill and cost of gathering cattle harmless in view of verdict.**

In action for injuries to cattle shipped over defendant's railway, where it was alleged that on account of defendant's negligence in failing to fasten the gates of its stock pens the cattle escaped, necessitating an expense of gathering them, and on account of defendant's failure to furnish cars extra feed was required, notwithstanding there was no evidence that such expense was reasonable, in view of defendant's request of an issue which required a finding as to whether the expense was reasonable, which the jury answered affirmatively, and of the exclusion of such items from the judgment, any error in refusal of an instruction not to allow damage for the items on the ground that there was no evidence that such expense was reasonable was harmless.

**7. Appeal and error 1078(1)—Failure to brief assignment waiver thereof.**

The failure to brief assignments of error is a waiver thereof.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by Mrs. T. S. Richards and another against John Barton Payne, Agent. From a judgment for plaintiffs, defendant appeals. Affirmed.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellant.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellees.

CONNER, C. J. Mrs. T. S. Richards and Tom Richards instituted this suit against John Barton Payne, Agent of the Railroad Administration, operating the Panhandle & Santa Fé Railway Company, the Fort Worth & Denver City Railway Company, and the Wichita Valley Railway Company, alleging that about December 29, 1918, plaintiffs shipped from Canadian, Tex., to Seymour, Tex., six cars of cattle and one car of horses over the respective railway lines above mentioned, and that the defendant Panhandle & Santa Fé Railway Company negligently failed to fasten its gates and to maintain such gates and fasteners on its stock pens in the city of Canadian so that said pens would hold said cattle, and thereby the cattle escaped from said pens, which necessitated hiring, at a cost of $15, three men to assist in gathering the cattle and repenning them.

The plaintiffs further alleged that the defendants were guilty of negligence in failing to furnish cars for the prompt transportation of said cattle, and allowed said cattle and horses to remain in said pens at Canadian from December 29, 1918, to January 1, 1919, necessitating extra feed that was furnished said cattle at a cost of $60. Plaintiffs further alleged that said railway companies were negligent in the transportation and handling of said cattle so that 17 of them were dead in the cars on arrival at Amarillo, Tex., and when they arrived at Seymour 22 of said cows were dead and also two bulls, and the remaining cattle were in a very shrunken condition by reason of the negligence of the defendants. It was further alleged that the 22 cows that died were of the reasonable value of $50 per head, and the two bulls were of the reasonable value of $300 per head, and that the remaining 159 head of cattle were handled roughly and allowed to stand on the tracks without feed or water under extreme weather conditions until they were damaged intrinsically in the value of $10 per head; that the 7 head of horses were damaged intrinsically to the value of $7.50 per head. Plaintiffs further alleged that at Seymour there was no established market for cattle, and that said cattle were not intended for the market, but were shipped for pasture. They accordingly prayed for a recovery in the sum of $4,002.50.

The defendants filed a general denial of all the allegations made by the plaintiffs, and further alleged that at the time said cattle were shipped it was very cold; that plaintiffs knew this fact, and shipped under conditions that they knew would likely result in the death of some of said cattle, and hence assumed the risks involved. The defendants further alleged that at the time of the shipment of said cattle and horses they were weak and unable to stand said shipment, and had been driven for a distance of something like 100 miles prior to the time they were shipped, and had been without feed or

water, and great numbers of said cattle died prior to the time they reached the railway station, "because they were suffering from either disease or weakness or something unknown to these defendants, and that the death of said cattle was not caused by the negligence of these defendants, but was caused by the inherent vices of the cattle."

The defendants further alleged that the cattle were placed in the pens by the plaintiff himself; that the gates were fastened by the plaintiff himself, and the plaintiff knew the kind and character of gates and the pens, and knew the kind and character of fasteners the gates had, and that it was not at any time made known to the defendants or their agents the weakness of the gates or the kind of fasteners on same, and that, if said cattle escaped and any damage was caused thereby, it was caused by the negligence and carelessness of the plaintiff in failing to report the defect in the gates to the pens and in failing to turn said cattle over to the defendants; that plaintiff knew there were no locks on the gates; that he himself attempted, without asking the defendant for a lock, to tie up said gate with his own rope; and that, if said cattle escaped, it was due to the fact that the plaintiff attempted to tie up the gate with his own rope, and hence plaintiff contributed to his own injury, if any he suffered. The defendants further alleged that, if the plaintiff had fastened said gates as he should have done, or had called on the defendant for a lock as he should have done, or had permitted the defendant to fasten said cattle up, said cattle would have been shipped at a time when there would have been no blizzard, and would have reached their destination without any damage, and by reason of these facts defendants alleged that, if the cattle were damaged, they were damaged by reason of the negligence and carelessness of the plaintiff.

Under the foregoing pleadings and evidence offered and upon the charge submitted to them by the court, the jury returned a verdict in favor of the plaintiffs for the sum of $2,120, and judgment was accordingly entered, and the defendants have appealed.

[1] Appellant's first proposition is as follows:

"The court erred in failing and refusing to give to the jury special charge No. 10 requested by the defendant, which was as follows: 'Gentlemen of the jury, if you answer issue I and II to the effect that the plaintiff's stock were damaged in transit from Canadian, Tex., to Seymour, Tex., then state whether or not any of said damage occurred by reason of inherent vice in said stock, such as disease or weakness or any other cause, not the negligence of the defendants. Answer yes or no. If you answer the preceding issue "Yes," then state how much of such damage was occasioned by the causes mentioned in the preceding issue. Answer by stating the amount.' Be-

cause the defendants alleged that said damage to the stock, if any there occurred, was occasioned by inherent vice in said stock, such as disease or weakness, and evidence introduced on the trial of said cause supported said issue."

We find no reversible error in the court's rejection of the charge requested for several reasons. There is no evidence, as we interpret the statement of facts, that tends to show that the cattle were affected with a "disease" of any kind. It is true that there was evidence to the effect that a number of the cattle in the herd were weak and had died while being driven from a point in Ochiltree county to Canadian, Tex., but this was caused, so far as an explanation is shown in the evidence, by the cattle being unaccustomed to the climate and by having drifted into fence corners during a snowstorm and being trampled to death. But this evidence related alone to cattle other than those involved in the shipment in question. There is no evidence that any of the cattle involved in the shipment was affected with any disease. Indeed, the evidence discloses no cause for the damage shown other than that of negligence of the defendants and other than may have arisen by reason of the weakness of the cattle; yet the charge would have permitted the jury to roam at large to ascertain the cause of the damage and attribute the damage to causes other than as alleged by defendants in their answer, which would have been objectionable, particularly in view of the evidence to the effect that after the shipment left Canadian and at Amarillo a very severe blizzard arose, and such blizzard was not pleaded, nor is it here contended as an act of God relieving defendants from the damage shown. It is to be observed also that the second paragraph of the requested charge merely required a finding of damage occasioned by the causes mentioned in the preceding paragraph without finding whether the damage was occasioned solely by weakness of the cattle, of which there was some evidence, or other cause, without the concurrence of negligence on the part of the defendants. The mere fact that the cattle were weak, and no other evidence tending to prove inherent vice in them was shown, will not relieve appellants from the consequences of their negligence.

The editor of Elliott on Railroads, vol. 4, § 1546, after stating that railroad companies are not liable for losses and injuries caused to live stock by the inherent nature and propensities of the animals, says:

"It has been held that the carrier is not liable for the death of a bullock which, after it has been properly fastened in the car, by its own exertions releases itself and is killed without any negligence on the part of the carrier, nor for the overheating of an animal caused by its own propensities, lack of vitality or exertion, nor for injuries to one animal inflicted by another where the carrier is free from fault.

But, as we shall hereafter show, the carrier is liable for loss or injury caused by its own negligence, although, but for the nature or propensities of the animals, no loss or injury would have resulted."

In section 1548 of the same volume and authority it is said:

"The carrier is, of course, liable for injuries caused to the live stock by its own negligence, and this is true although the animals, owing to their natural propensities, may have contributed thereto, provided their owner or his agent was not guilty of contributory negligence. Thus, where animals, by being overcrowded, become heated and die by reason of the negligent failure of the carrier to water and cool them, it is liable therefor, and the fact that its pump is out of order is no excuse. So where the train is delayed by a snowstorm and the carrier negligently permits them to die of cold. So where the carrier negligently furnishes an infected car, or negligently sets the bedding on fire, and thus injures the stock."

The principles so indicated by this author has more than once been applied, both as to persons and to live stock, by our own decisions. See St. L. S. W. Ry. v. Ferguson, 26 Tex. Civ. App. 460, 64 S. W. 797; Pecos & N. T. Ry. v. Williams, 34 Tex. Civ. App. 100, 78 S. W. 5; T. & P. Ry. v. Dawson, 34 Tex. Civ. App. 240, 78 S. W. 235; Ft. W. & D. C. Ry. v. Alexander, 36 Tex. Civ. App. 297, 81 S. W. 1015; Ft. W. & D. C. Ry. Co. v. Henry (Tex. Civ. App.) 88 S. W. 399. The answer of the jury, therefore, had it been given as requested, would have been inconclusive. Moreover, the court at defendant's request gave the following charge:

"Was the damage, if any, complained of in plaintiff's petition caused as the sole, direct, and proximate result of the cattle in question being too weak, or poor, if any, to stand the trip in question from Canadian, Tex., to Seymour, Tex., with ordinary care and reasonable dispatch?"

' To which the jury answered "No."

On the whole, we conclude that appellant's proposition No. 1, and the assignment upon which it is predicated, must be overruled.

[2] Appellant's proposition No. 2 is as follows:

"The court erred in failing and refusing to submit to the jury special charge No. 7, requested by the defendant, which was as follows: 'Find whether or not there was a market value for cattle of the kind and quality of the plaintiff's on or about the 5th day of January, A. D. 1919. Answer yes or no.' Because there was evidence, both pro and con, as to whether there was or was not a market for said cattle at Seymour, Tex., at the time said cattle were delivered, to wit, about January 5, 1919."

The plaintiff Richards testified on the subject of market value as follows:

"I am acquainted in the country about Seymour and Throckmorton. There is no place or market like there is at Kansas City or Fort Worth. * * * There was a market for cattle around in that country there around Seymour and Throckmorton. You could sell them provided you could find a buyer, and buyers were pretty plentiful. The sale there is just to one man. There is no established market."

Merle T. Waggoner testified:

"I expect that you could sell cattle around Seymour just any time. I am not familiar with that. There are generally a good many buyers in and around Seymour, Tex. You nearly always can find a buyer for cattle where there are men in the cattle business. There are lots of people in the cattle business around Seymour, Tex., and there is always a market for cattle at Seymour, Tex., and was in the fall of 1918, I guess. •

"Q. What were cows with calves; say, cows, four, six, eight years old, what was that class of cows, say, to have calves next spring, what was the intrinsic value of those cattle? A. My value on the cattle was $60, and they were good high-grade white-faced cows. My value was in accordance with the Fort Worth market."

J. M. Allen testified:

"There was kind of a local market at Seymour, but nothing regular that I knew anything of.

"Q. Now, Mr. Allen, do you know what cows, good white-faced cattle, in good grade, four, six, and eight years old, with calf, reasonable poor, but strong, what they were worth during the period about the 1st of January, 1919, that is, at Seymour and Throckmorton, or in that part of the country out there; do you know the intrinsic value of those cows that were to bring calves? A. Well, I kept up with the market pretty good. Of course, I did not have any right at that time. I was out there off and on every month or two up until the next year. I saw my brother sell some cows there. I would say they were worth $75 to $80 a head."

The plaintiff Richards further testified:

"Those cattle were pretty near all Herefords, with a small per cent. of Durhams mixed up in it. They were good cattle—were cows. They were cows that were all going to bring calves in the coming spring, following the shipment in the winter."

We think it quite doubtful whether the evidence quoted—and none other has been pointed out by appellants—raises the issue of a market value in Seymour at the time in question, but, if so, we fail to find any prejudicial error in refusing to submit the issue as requested. It is to be noted that the charge failed to direct the attention of the jury to the place at which the market, if any, was to be ascertained. We may judicially know that there were markets for cattle and possibly markets for cattle of the kind and in the condition of appellee's at the time of their delivery at the end of their transportation, but the material inquiry was whether there was a market value for such cattle at Seymour at such time. None of the witnesses relied upon as showing a market

value, except Merle T. Waggoner and J. M. Allen, gave values. Waggoner's estimate was $60, and that was placed on the "Fort Worth market." Allen's answer was that the cattle were worth "$75 to $80 a head." The jury, in answer to a special issue, found that the 22 cattle that died at the end of the transportation were worth $50 per head, considerably less than the value given by any of the witnesses, and we think before it could be said, in any event, prejudicial error was shown, that it should be made to reasonably appear not only that there was a market value for cattle at Seymour at the time and place the cattle were delivered at the end of the transportation, but also that such market value was less than the value as found by the jury. On the whole, we are of the opinion that appellant's proposition No. 2, and the assignment upon which it is based, should be overruled, and also that propositions 3, 4, 5, and 6, all relating to the subject of market value, should likewise be overruled for reasons stated in disposing of proposition No. 2, except that we should perhaps add that the special charges requested set out in appellant's propositions Nos. 4 and 6 are objectionable in that they assume there was a market value of the animals in question at Seymour in the condition in which they actually arrived, thus being on the weight of the evidence. And proposition No. 5 requests a finding of reasonable market value of the bulls, and the evidence nowhere raises that issue.

[3] Appellant further complains of the court's refusal to submit the following issue:

"Was the plaintiff Tom Richards guilty of contributory negligence in the manner and way he fastened the gates to the stock pens at Canadian, Tex., at the time he put said cattle in the pens? Answer yes or no."

In support of this issue appellants quoted the following testimony of plaintiff Tom Richards:

"I shipped there on the 1st day of January, and then I was three days before I got shipped; that would throw it about the 29th, would it not? I got in about two hours of sun. I put the cattle there in the stockyards. I went up to the agent for the key, as the stockyards are usually locked. He said that there wasn't any key to it, to go ahead and pen them, which I did. I drove those cattle into Canadian, Tex., and put them in a pen myself. I tied the gate myself. I used my own rope to tie it. I did not call on the agent to do the tying of the rope. I do not know whether the agent was right there at the time when we put those cattle in the pen or not, but he was there just a little bit afterwards. I do not know whether he was there when I tied the gates or not. * * * I will just tell you how that was. After we came off that bridge at Canadian—there was a bridge at Canadian, just about a mile to town. When I asked the agent for the key, he said they were not locked, for me to go on back down there. I said, 'Come on down there; I am going to load a load to Kansas.' I never did ask him for any lock to lock that gate. I just tied it myself there. That would have held it if it had not been untied. I do not know who untied it; I think that I do. When I came back, I found it open. The cattle got out of that gate that I had tied up. I used my own rope to tie it up with. I told the agent about tying that up with my own rope after they had scattered. I did not tell him about using my own rope before they scattered."

We fail to see wherein this evidence raises the issue of contributory negligence on the part of Tom Richards. It is statutory with us that railroad companies are required to furnish suitable pens for the shipment of live stock, and, when tendered, they must receipt for them and will be held responsible for due care while in their keeping. According to the testimony, Richards found the gate without lock or key. He made request therefor of the agent, and was instructed that there was no key and "to go ahead and pen them," which he did. He tied the gate with his own rope. But appellant has not shown that the rope was for any reason insufficient for the purpose, or that it was insecurely tied. Nor do we find that the agent testified that he did not know of the manner in which the gate was tied. The truth seems to be that, so far as the evidence points out, the fact that Tom Richards tied the gate with his own rope had nothing whatever to do with the escape of the cattle. If negligence with respect to the insufficiency of the fastening of the gate is to be attributed to either party, it would seem attributable to the railroad company or its agent rather than to the plaintiff Tom Richards, in that no lock or key had been provided. Moreover, we fail to see that, if it could be said that the plaintiff Richards was guilty of negligence in the respect mentioned, it was the proximate cause of the damage done. Appellant, in the effort to show that the alleged contributory negligence did approximately enter into the damage that followed, points out evidence which in substance showed that on the day after the cattle got out the weather commenced to turn cold, and kept getting worse all the time, and was followed by a "blizzard" before the cattle arrived at Amarillo. But the evidence shows that after the cattle had been repenned by the plaintiff it was some 36 hours before locomotive power was furnished for the transportation of the cattle from Canadian on toward their destination. The jury in answer to a special issue found appellant guilty of negligence in this respect, and, as the evidence impresses us, this negligence, rather than the manner in which the gate was tied, constituted the proximate cause of the damages of which plaintiff complains.

[4] In propositions Nos. 8 and 9 appellant complains of the refusal to submit issues

which sought to ascertain a finding of whether the cattle in question would have been shipped through without any damages had the same been loaded and shipped on the day the cattle arrived in Canadian, but such issues were purely speculative and wholly foreign to the issues made by the pleadings and involved in the case, and the court properly refused to submit them. Appellant in his brief under proposition No. 10 has pointed to no evidence that would authorize the conclusion that negligence on the part of the Panhandle & Santa Fé Railway Company, if any, in permitting the cattle in question to escape from its pens, would be a proximate cause of the damages flowing from subsequent negligence of that company in failing to promptly furnish transportation for the cattle from Canadian on the day in which they were penned. Negligence, if any, in permitting the escape of the cattle doubtless proximately resulted in a necessity of the expenses appellee incurred in repenning them, but this item was only $15, and, as will further appear from the disposition of other assignments, is immaterial. Hence no reversible error is shown in the action of the court in refusing to submit the issue set out under proposition No. 10.

[5] Nor do we think the court erred in receiving the testimony of Tom Richards over the objection of the defendant relating to the number of calves he lost the next spring from his cows. Plaintiff in his pleadings did not seek a recovery for the value of the calves lost, nor was any issue submitted that would permit a recovery of that character, but there was testimony to the effect that the negligence, want of feed and water, and exposure complained of by the plaintiff would tend to cause cows bearing calves to lose them, and thus injure the cows, and the evidence objected to was relevant to the issue of the damage to the cows. Appellant's proposition No. 11 is accordingly overruled.

[6] In propositions Nos. 12 and 13 appellant complains of the refusal of the court to instruct the jury, as was requested, to not allow plaintiff any damage whatever for the extra feed bill and the cost of regathering the cattle after their escape from the pens, on the ground that there was no evidence that such expense was reasonable. It has been frequently held that in order to justify a recovery for such items of expense the evidence must show that they were reasonable. As to the items under consideration the evidence does show that the cattle were held in the pens at Canadian some 36 hours or more, that feed at the time and place was high, and that in fact plaintiff fed the cattle two tons of hay at a cost of $30 per ton, and the defendants themselves re-

quested the submission of an issue which was given which required a finding of whether this item of expense was reasonable, and the jury answered that it was, so that we do not feel constrained to support appellant's contention in this respect. However, if it be admitted that there was no evidence whatever, and there was none as to the item of $15 expense in repenning the cattle, showing the reasonableness of these two items of expense, we think the errors are harmless and not such as to prompt the suggestion on our part that they be cured by a remittitur.

In answer to special issues the jury found the value of the 22 cows dead upon their arrival at Seymour was $50 per head (just one-half of what the evidence would have authorized), a total of $1,100; the value of the two bulls was $150 each, total $300; that the damage to the remaining 159 cows was $5 each (just one-half of what the evidence would have authorized), total, $795—making a grand total of $2,195. The judgment, as actually rendered by the court, based upon the verdict of the jury, was for $2,120 only, and it thus appears that the trial court, in entering judgment, excluded the two items of $60 and $15, to which the issues set out in appellant's propositions Nos. 12 and 13 relate.

[7] What we have said disposes of all of the assignments of error which appellant has briefed. It is suggested, however, in conclusion, that—

"Appellant here and now does not waive by failing to insert in this brief any of their assignments in their motion for new trial, as shown on pages 65 to 72, inclusive, of the transcript, but earnestly insist upon each and all of the assignments therein raised."

In appellant's motion for a new trial some 55 grounds therefore were set up which, under the statutes, may be used as assignments of error. Of these, we have disposed of 11, all that are presented in appellant's brief, and we can hardly believe that the able counsel representing appellant are serious in their contention that we should, under our rules and decisions, consider the numerous assignments of error contained in their motion for a new trial, without any support in the way of propositions, statements of evidence or authorities. But, however this may be, we think it clear that by the failure to brief them all such assignments have been waived. See Harris' Rules of Court, Annotated, rule 32, p. 101, and notes thereunder.

We conclude that all assignments of error and propositions presented should be overruled, and the judgment affirmed.